The final argument of the morning is in Appeal No. 241163, the United States v. Taibian Harris. Mr. Schmidt, nice to see you. Thank you, Your Honor. May it please the Court and Counsel, the standard of review here, of course, is de novo review regarding whether the findings of the District Court support the imposition of the enhancement of the 3C1.2 enhancement, and then also clear error for the District Court's factual determinations. This was a strange case for a 3C1.2 enhancement, because at the hearing, at the sentencing hearing, not a single police officer testified, and the only police car video that was shown from one car, the last car that ended up crashing into the car driven by the defendant. As a result of the limited evidence, there were some clear factual errors, we believe, that were made by the District Court. Of course, it's Hornbrook law, as stated in United States v. Hibbett, 2024 case in this court, that for this enhancement to apply, the defendant must have known he was fleeing from law enforcement. The District Court, one of the facts that the District Court found, well, let me back up. When the defendant and his accomplice drove away from the phone store after the robbery by the accomplice, they drove away for about 15 minutes without any police involvement behind them or near them. Instead, there was a bait phone that was among the items taken, and police began tracking and trying to find out where the alleged robbers were. About 15 minutes occurred before any police car was even seen near the car driven by the  Finally, at a gas station, where the defendant and his accomplice had stopped, there was a police car in the area. But the police car made no effort to detain or pull over the car driven by the defendant. So the first factual finding that the District Court made that was an error was that the defendant fled from the gas station. There's simply no evidence that the defendant knew that the police were pursuing him, and so he cannot be said to have fled from law enforcement if he doesn't know under Hibbett that the police were following him. The second clear... Okay, you can keep going. You have to account, though, for the testimony that was given by Mr. Smith, and Mr. Smith testified pretty clearly that it all hit the fan when the cops showed up at the gas station. You're correct, Your Honor. The only testimony given in support of this enhancement was by Travion Smith, the accomplice, the person who went into the phone store. And what he testified was that they left the gas station, and he put it in, they led police on a high speed chase. But interestingly, the government never elicited from him exactly where they had engaged in speeds in excess, fast speeds, where they had gone through a stop sign, where they had allegedly gone through a red light. All of that could have occurred, going through a stop sign and the like, or in speeds, fast speeds given conditions in an area that wasn't a residential neighborhood. So there was a lack of a factual basis. Even if you accept Travion Smith's testimony, there's a lack of a factual basis as to where these things occurred. They were never pinned down precisely at the hearing. Another factual determination by the district court, and an important one, was that the defendant at the end of this episode drove straight at a squad car. This is a quote from the court's sentencing memo. This is just dead wrong. If your honors look at Government Exhibit 3, the video, it is crystal clear that the defendant was trying to pass in the opposite direction, the police car, and the police car, and you can tell this by the camera angle, the police car deliberately turns into the defendant's car. This is also confirmed by Travion Smith. He said in unequivocal terms that the police officer in that part of the episode deliberately intentionally turned her car into the car. But this is what the district court based the enhancement on. He said, the district court said, that the defendant, in driving the car in the way that he did on that street, coming at the police officer, created a substantial risk. At the sentencing hearing, the district court never said that this was a gross deviation from the standard of care. The district court cited that standard initially, but then never applied it at the sentencing hearing itself. Only when you get to the court's after the fact sentencing memo does the court say that that constituted, coming at the police officer from the opposite direction on the street, that constitutes a gross deviation from the standard of care. But that's where the district court got mixed up, we think. The police officer made the decision to turn her car into the defendant's car, otherwise the two cars would have passed by one another and gone on their way. The other problem with the district court's analysis was, we think it's unfair and wrong to assume that you're fleeing from law enforcement when a police car is approaching you and not behind you or signaling you to stop in some way. No, I watched the video. Thank you. It's my job. When your client is turning left, it doesn't look like he stops, and it's very snowy, and he swerves. It certainly looked like he was in a big hurry, like he was running from something to me, right? So even apart from the crash, why isn't just driving in snowy conditions, running stop lights, when you know police are after you, if you credit Smith, why isn't that enough under our precedent to apply this enhancement? We think it's not enough, Your Honor. Let me just address that stop sign issue. It's not clear to me in watching the video that there's a stop sign there. The defendant proceeds, and slightly skidding on snowy roads, we think is not a gross deviation from the standard of care of a reasonable person under the circumstances. Anyone who's driven in northern Indiana or even Chicago knows that you can be driving quite carefully and still skid out. That could be a mistake in driving or negligence, but it's not a gross deviation from the standard of care. And critically, Your Honor, there is no definitive evidence as to what speed the defendant was driving in the residential neighborhood. What would be definitive evidence in your view? In lots of cases that I have, where police officers are testifying, I pace the defendant as we chased him, and we paced him at 57 miles per hour, or in excess of 55 miles per hour. Or my squad car cam behind the person we were chasing showed that we were going at 63 miles per hour, and we were not making up ground. That's the kind of evidence that would show what the actual speed was. The only speed we know at the end when the two cars crashed is the speed of Officer Dean, formerly known as Lindsey, hence the little discrepancy. We know how fast she's going, but we don't know at all how fast the other person is going, and you can't tell from the video. Look, they didn't clock him. You're right about that, if that's the point you're making, but Mr. Smith testified, and the district court finds expressly that he credits him on the testimony, that they were traveling between 50 and 60 miles an hour. I mean, it is as clear as day in the transcript. Not quite. I'm reading from it. What the district court said at the hearing, at page 60 of the transcript, was when he was talking about Mr. Smith's testimony about going 50 to 60 miles per hour, he said... It was actually 50 or 60, or whether it was an impression, you were all driving too fast. Correct. So he said, perhaps you were, perhaps you weren't. So the district court doesn't make a finding of actual speed. He only says that based on Mr. Smith's testimony, in certain places that they were driving in excessive speed, too fast for the conditions. But we believe that the district court made a series of factual errors, fleeing from the gas station, aiming right at the officer's police car at the end, and then failed to correctly apply these facts to the proper standard, which is not negligence, not a mistake, but gross deviation from the standard of care. Thank you. Okay. Thank you, Mr. Schmidt. Mr. Temkin, we'll hear from you. May it please the court. Good afternoon, your honors. Eli Temkin for the United States. This court should affirm Mr. Harris's sentence. Mr. Harris advances arguments on appeal that might be perfectly fine before the district court in the first instance, but this court isn't looking at the case in the first instance. The district court held a hearing, received evidence, and heard and saw the live testimony of a witness, Mr. Harris's accomplice, who was at his side during the entire time at issue here. The district court applied the correct legal standards and its factual findings in concluding, were not clear error, in concluding that Mr. Harris recklessly endangered others in the course of fleeing from law enforcement officers. I'll run through those findings just briefly, and then I'll be happy to address any questions. Mr. Harris was the getaway driver from an armed robbery. The roads were treacherous, covered in snow and ice, as you can see in the video, and that's why they chose that day to commit the armed robbery. During the time he was driving, he saw police cars multiple times. The first time he saw a police car was at the gas station. He and Mr. Smith both saw the police car. Mr. Smith made a comment to Mr. Harris about it. They both got in the car and drove away before the officer could stop them. That's one piece that indicates knowing flight. Again, they came across an officer. After that point, at a roundabout on Olive Street, the officer pulled out and, again, they drove away before the officer could stop them, and on that point, there is specific evidence on where, if you look at Exhibit 6, where Mr. Harris was engaging in reckless driving, weaving in and out of traffic, going at an excessive speed, running through a traffic signal. Throughout that entire time, Mr. Harris was driving recklessly. On top of all that, when he came across Officer Dean on the narrow street, he drove directly at her and created the conditions for a crash. All of that was reckless endangerment. A few things I'd like to clear up. My colleague mentioned standard of review. It is de novo on the ultimate legal conclusion, but standard of review is clear error as to whether Mr. Harris, one, knowingly fled from police, and two, whether he recklessly endangered others. Those are findings of fact. For example, under the Hibbitt case and under the Brooks case, those are both findings of fact. As to how the government presented its case, again, the government put on a witness who was at Mr. Harris' side during this entire time. The video speaks for itself. The district court applied the correct standard, the correct recklessness standard, and found that there was a gross deviation from what a reasonable person would do in these circumstances. Finally, just as to the question of knowing flight, this court has repeatedly held in cases like Hibbitt that you can infer a defendant's knowledge that they are fleeing based on the circumstances, just like you can infer that here in the district court reasonably did infer that by driving away quickly once they saw police cars, they were knowingly fleeing from those officers. Unless the court has any further questions, the court should affirm Mr. Harris' sentence. Mr. Temkin, thank you very much. Thank you. Mr. Schmidt, any final word? No, Your Honor. Thank you. Okay, Mr. Schmidt, I see on the list of cases from today, you accepted this case on appointment from the court, correct? I did. You have our thanks for that, and we very much appreciate you doing that service to the court and, of course, to Mr. Harris. Mr. Temkin, as always, thanks to the government. That concludes today's arguments, and the court will be in recess.